United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW SAMUEL GUILLORY,
Plaintiff,

v.

HOPE PROGRAM,
Defendant.

Case No. 25-cv-00084-WHO

**ORDER GRANTING JUDGMENT ON THE PLEADINGS**

Re: Dkt. Nos. 100, 101, 106

In this case, *pro se* plaintiff Andrew Guillory ("Guillory") alleges that defendant HOPE Program ("Hope") violated his due process and privacy rights by using falsified records to place him in a mandatory sex offender group therapy program that was not part of his conditions of parole. Hope moves for judgment on the pleadings as to Guillory's Second Amended Complaint ("SAC"), *see* Dkt. No. 39, and Supplemental Complaint, *see* Dkt. No. 88. Because Guillory has failed to state a claim in his pleadings, Hope's motion is GRANTED without leave to amend.[1] His request to file a second supplemental complaint, Dkt. No. 106, is DENIED.

**BACKGROUND**

In 1995, Guillory was the "subject of a juvenile court proceeding in the Alameda County Juvenile Court in San Leandro, California," where he was adjudicated delinquent for attempted rape. *See* SAC at 4. He is currently on parole for a subsequent conviction for failure to register as a sex offender. *Id.* He alleges that while his plea agreement for this conviction did not require participation in a sex offender treatment program, a "parole condition was [nonetheless] imposed

---

[1] This Order also resolves the parties' July 20, 2026, discovery dispute concerning Guillory's request for production of documents and Hope's ability to conduct an in-person deposition of Guillory. *See* Dkt. No. 100. These issues would not affect the outcome of Hope's motion and are moot in light of this Order.

requiring Plaintiff to attend group therapy at Defendant The Hope Program." *Id.*

Guillory maintains that a "STATIC-99R risk assessment report concerning Plaintiff was deliberately falsified by CDCR parole officials and transmitted to The Hope Program" to "artificially inflate his risk score, creating a fraudulent pretext to impose the treatment condition and increase payments to The Hope Program." *Id.* The allegedly false information in the STATIC-99R assessment included two false convictions (claiming Guillory was convicted for rape and embezzlement, as well as treating his juvenile record as an adult record), two false prior charges for assault to commit rape and sexual battery, and incorrect personal information (listing him as having never been married, which increased his risk score). *Id.* at 4–5. In his view, the "cumulative impact of these fabrications [was] to create a fraudulent document that stands as the sole justification used by Defendant to deprive Plaintiff of his liberty by forcing him, under threat of parole revocation, to attend The Hope Program." *Id.* at 5.[2]

Guillory confronted Hope about these falsified records while at a "containment meeting," but Hope "refused to correct the report, demonstrating immediate knowledge and deliberate indifference to the truth." *Id.* at 5. During the meeting, Reed Davis, a "class facilitator and employee of The Hope Program . . . acknowledged the report's inaccuracies" and "explicitly stated that he knew The Hope Program was using Plaintiff's juvenile adjudication as if it were a criminal conviction to justify Plaintiff's mandatory participation in the program." *Id.* As a result, Guillory alleges that he was "coerced into publicly discussing the intimate details of his sealed juvenile case in group therapy sessions with convicted adult sex offenders," causing him severe psychological distress and humiliation. *Id.* at 5–6.

Guillory's SAC asserts three causes of action against Hope: (1) violation of the Fourteenth Amendment Due Process Clause; (2) violation of federal statutory rights and the constitutional right to privacy under 42 U.S.C. § 1983; and (3) defamation (liberal) under California state law.

---

[2] Guillory originally named Contra Costa County Parole (actually part of a division of the California Department of Corrections and Rehabilitation) and parole officer DeJesus as defendants. Dkt. No. 1. I denied his request for preliminary injunction because those defendants were immune, and later dismissed his Complaint. Dkt. Nos. 28, 38. After Hope appeared, the case proceeded and discovery was completed in accordance with the Court's schedule.

United States District Court
Northern District of California

*See id.* at 6–7. Guillory also filed a Supplemental Complaint adding an additional Fourteenth Amendment Due Process claim for the "deliberate use and creation of fabricated evidence" on June 4, 2026, *see* Dkt. No. 88 at 4. That claim alleges that on November 22, 2025, Amy Groven, a Hope clinician, produced a Level of Service/Case Management Inventory ("LS/MCI") assessment that relied on "the exact same fabricated data found in the contested Static-99R" that served as the basis for the mandatory treatment condition. *See id.* at 3.

On July 31, 2026, Hope moved for judgment on the pleadings. *See* Defendant Hope Program's Motion for Judgment on the Pleadings ("Mot.") [Dkt. No. 101]. Discovery closed on August 3, 2026. Guillory filed his opposition on August 5, 2026. *See* Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings ("Oppo.") [Dkt. No. 102]. Hope replied on August 17, 2026. *See* Hope Program's Reply in Support of Motion for Judgment on the Pleadings ("Repl.") [Dkt. No. 103]. I heard oral argument on September 9, 2026, and the matter was submitted.

Two weeks later, on September 23, 2026, Guillory filed a motion to file a Second Supplemental Complaint, alleging three new claims. Motion for Leave to File Second Supplemental Complaint [Dkt. No. 106]; Second Supplemental Complaint [Dkt. No. 107]. I had previously allowed him to file a supplemental complaint on May 27, 2026, but denied his request to file another supplemental complaint a few days later. Dkts. Nos. 83, 89 and 99. Discovery has closed. This is a transparent attempt to keep his litigation against Hope alive given that the matter regarding his pleadings has been submitted. The claims in the Second Supplemental Complaint are new. The prejudice to Hope in having to address new claims in this elongated and constantly shifting litigation is obvious and compelling, as is the deleterious effect on judicial economy given the impact on the case schedule in reopening discovery to litigate new claims. In the exercise of my discretion under Federal Rule of Evidence 15(d), I DENY Guillory's motion to file the Second Supplemental Complaint.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("FRCP") 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

Fed. R. Civ. Proc. 12(c). "Dismissal under Rule 12(c) is warranted when, taking the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017) (citation omitted). "[M]otions for judgment on the pleadings are functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (internal quotation marks omitted) (citing *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). "[U]nder both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). For both motions, dismissal may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F. 2d 530, 534 (9th. Cir. 1984) (citation omitted).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

## DISCUSSION

### I. Substantive Due Process (Count I)

Guillory's first cause of action alleges that Hope violated his substantive due process rights by "deliberately and knowingly utiliz[ing] fabricated evidence—the falsified STATIC-99R report—against Plaintiff to justify an unwarranted parole condition." SAC at 6. Hope moves for judgment as a matter of law on this claim because the California Department of Corrections and

United States District Court
Northern District of California

Rehabilitation ("CDCR"), not Hope, created the STATIC-99R report. Hope is correct.

The Ninth Circuit has found that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

The SAC and Supplemental Complaint fail on the first prong—that the defendant "deliberately fabricated evidence." *Id.* The SAC concedes that it was the "prison officials—not HOPE—[who] were responsible for creating the Static-99R report that contained the false statements." Mot. at 7; *see* SAC at 2–3 (alleging that the Static-99R report was "created by parole officials and transmitted to the Hope Program"). Hope also notes that California caselaw and statutory authority confirm that the CDCR is solely responsible for "administer[ing] the Static 99-R to all adult male inmates required to register as sex offenders," and that only after completing the Report will an offender be referred to Hope for a "face to face interview" involving the LS/CMI and STABLE-2007/ACUTE-2007 risk assessments. *People v. Johnson*, 45 Cal. App. 5th 369, 393 n.8 (citing Cal. Pen. Code §§ 290.04, 290.06); Cal. Code Regs., tit. 15, § 3573(d). Because Hope was not involved in the alleged fabrication of the Static 99-R report, Guillory cannot allege his substantive due process claim against it.

Guillory argues in response that Hope "attempts to evade liability by asserting that CDCR alone created the Static-99R report, and that [it] merely acted as a downstream consumer of prison records." Oppo. at 5. In Guillory's view, the substantive due process claim focuses not only on the Static-99R report, but also the fact that Hope "willingly *used*" the report to "independently create[] two brand new, proprietary risk assessment instruments: the Level of Service/Case Management Inventory ("LS/CMI") and the STABLE-2007 risk assessments." *Id.* (emphasis added). In other words, Hope "did not passively rely on CDCR data, but rather affirmatively utilized the disputed data to independently calculate and publish" an elevated risk score. *Id.*

Guillory's argument holds no weight. First, the SAC makes no reference to Hope's

creation of the LS/CMI and STABLE-2007 risk assessments out of the Static-99R report. Nor could it, as the Supplemental Complaint alleges that those documents were created on November 22, 2025, after the SAC was filed. *See* Dkt. No. 88 at 2. As Hope points out in its reply, "it is not factually possible that [this] claim [was] based on HOPE's alleged creation of these two assessments" given the timing of the risk assessments. Repl. at 3.

The only case Guillory cites in support of his argument, *Costanich v. Department of Social and Health Services*, is inapplicable. 627 F.3d 1101 (9th Cir. 2010). *Costanich* concerned a social worker's decision to "deliberately misquote[] and misrepresent[] witness statements, i.e., deliberately falsif[y] statements in her investigative report and declaration." *Id.* at 1111. A Ninth Circuit panel found that the plaintiff had a "due process right to be free from deliberately fabricated evidence in a civil child abuse proceeding." *Id.* at 1114–15. Here, by contrast, Guillory concedes that in creating the LS/CMI report, Hope and its employees "deliberately populated Plaintiff's LS/CMI with the exact same fabricated data found in the contested Static-99R." Supp. Complaint ¶¶ 2, 10. Nothing in the SAC or Supplemental Complaint (beyond conclusory allegations) plausibly suggests that Hope knew that this information was allegedly false, or that it deliberately intended to utilize fabricated information in creating the CMI and STABLE-2007/ACUTE-2007 risk assessments. Taken together, Guillory has not plausibly alleged a violation of his substantive due process rights by Hope. Judgment on the pleadings is GRANTED as to Count I.

## II. RIGHT TO PRIVACY (COUNT II)

Guillory's second cause of action asserts that the "confidentiality of juvenile records and the principle[] that a juvenile adjudication is not a criminal conviction is a clearly established right protected by federal statute, 18 U.S.C. § 5038, and the constitutional right to privacy." SAC at 6. Guillory alleges that Hope violated this right by "utilizing [his] confidential juvenile adjudication as if it were an adult criminal conviction to justify his placement in [Hope's] program," in violation of the "plain language of 18 U.S.C. § 5038, which states an adjudication shall not be deemed a conviction 'for any purpose.'" *Id.* at 7.

Guillory's reliance on Section 5038 is misplaced, as that statute (1) focuses on federal

United States District Court
Northern District of California

juvenile delinquency proceedings, and (2) does not confer a private right of action on Guillory. *See Anderson v. Boxberger*, No. 17-cv-00884-CMA-STV, 2018 WL 4334061, at *1 (D. Colo. Apr. 2, 2018). Moreover, while Guillory argues that Hope "deliberate[ly] recharacteriz[ed] his sealed 1995 juvenile adjudication as an adult criminal conviction," he does not explain how Hope impermissibly disclosed confidential information to a third party in violation of his right to privacy. Even if true, the Supreme Court and numerous circuit courts have held that the disclosure of criminal or juvenile records in like circumstances does not violate the right to privacy. *See Paul v. Davis*, 424 U.S. 693 (publishing arrest information does not constitute invasion of the right to privacy); *J.P. v. De Santi*, 653 F.2d 1080 (6th Cir. 1981) (disclosing juvenile records for governmental and social agencies to comply with probational orders does not violate a right to privacy).

While I acknowledge the unique privacy concerns that juvenile records present as compared to an adult criminal record, Guillory has not plausibly alleged that Hope breached his right to privacy by utilizing information provided by CDCR to determine his eligibility for its services. Judgment on the pleadings is accordingly GRANTED.

**III. LIBEL (COUNT III)**

Guillory's final cause of action asserts that Hope engaged in libel by pushing "false and unprivileged written statements of fact, including that Plaintiff was convicted of embezzlement," despite having "reason to know they were false." SAC at 7 (internal quotations omitted). California law defines libel as "a false and unprivileged publication by writing . . . which has a tendency to injure [any person] in his occupation." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008) (modification in original) (citing Cal. Civ. Code § 45). To state a claim for libel, a plaintiff must allege "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007); Cal. Civ. Code §§ 45-46. This requires a plaintiff to "set forth either the specific words or the substance of the allegedly defamatory statements." *Comstock v. Aber*, 212 Cal. App. 4th 931, 948 (2012) (internal quotation marks and citation omitted). For purposes of a libel claim, "[p]ublication means communication to some third person who

understands the defamatory meaning of the statement and its application to the person to whom reference is made." *Smith v. Maldanado*, 72 Cal. App. 4th 637, 645 (1999).

Neither the SAC nor Supplemental Complaint suggest that Hope published (communicated to a third person) the false statements contained in [the] Static-99R report or any other personal information.[3] Guillory argues that because sex offender treatment providers are "legally required to transmit [reports like the LS/CMI and STABLE-2007 risk assessments] to third parties, including CDCR Division of Adult Parole Operations ("DAPO") parole agents, unit supervisors, and non-clinical members of the Containment Team," Hope engaged in affirmative publication by transmitting this information to the CDCR. Oppo. at 8. But even assuming that the LS/CMI and STABLE-2007 risk assessments were disclosed by Hope to a third party, Guillory concedes that the reports would have gone to the same people that provided the Static 99-R report to Hope in the first place: CDCR and its parole agents. Not only is Guillory's reasoning circular, but it also eliminates the possibility that CDCR would "understanding the defamatory meaning of the statement." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). Judgment on the pleadings is GRANTED as to Guillory's libel claim.

## IV. LEAVE TO AMEND

If the court dismisses the complaint, it typically "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

Leave to amend would be futile in this case. Guillory has been provided at least three opportunities to amend or clarify his claims against Hope, to no avail. *See* Dkt. No. 4 (Magistrate

[3] Hope also argues that Guillory did not exhaust his administrative remedies to assert his libel claim. Repl. at 6. Because this argument is raised for the first time in the reply brief, I decline to address this argument.

Judge Hixson screening Guillory's complaint and requiring more facts as to whether the Hope Program qualified as a state actor); Dkt. No. 8 (Magistrate Judge Hixson requesting more information about who Guillory intended to bring his claims against); Dkt. No. 38 (Order Granting Motion to Dismiss). In my most recent Order on defendants' motion to dismiss, I warned Guillory that I would only provide "leave to amend *one more time*, to clarify his claims . . . against the other defendants regarding falsification of records." Dkt. No. 38 at 2, 12 (emphasis added). Because the SAC and Supplemental Complaint raise no plausible allegations against Hope, and because Guillory's claims would likely be barred even after filing an amended complaint, leave is inappropriate under the circumstances.

**CONCLUSION**

For the reasons set forth above, Hope's motion for judgment on the pleadings is GRANTED without leave to amend. The motion to file the Second Supplemental Complaint is DENIED. Judgment is entered in favor of Hope. The Clerk is instructed to close this case.

**IT IS SO ORDERED.**

Dated: November 5, 2026

William H. Orrick
United States District Judge